**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS   DIVISION**

| | | |
|---|---|---|
| **SANIJET CORPORATION** | ) | |
| | ) | |
| **v.** | ) | **3-06-CV-135-O** |
| | ) | |
| **BEAUTY MALL, LTD., et al** | ) | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the District Court's order assigning pretrial management of the above-styled and

numbered action to the undersigned, including a recommendation with respect to the construction

to be applied to claims in the patents-in-suit, on May 29, 2008, a *Markman*[1] hearing was held before

the undersigned magistrate judge and based upon the documents, the pleadings and arguments of

counsel, the magistrate judge recommends that the following constructions to claims in the patents-

in-suit be adopted and applied by the District Court:

The threshold issue in any patent infringement case is claim construction. This is a question

of law for the court to decide. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372, 116

S.Ct. 1384, 1387, 134 L.Ed.2d 577 (1996). In construing the scope of a patented invention, the court

must first look to the "intrinsic" evidence of record. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d

1576, 1582 (Fed. Cir. 1996); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir.

1995), aff'd, 116 S.Ct. 1384 (1996). Intrinsic evidence includes the claim language, the

specification, and the prosecution history. *Vitronics*, 90 F.3d at 1582.

The patents-in-suit, U.S. Patent Nos. 4,853,987 (the '987 patent), 5,414,878 (the '878 patent)

and 5,587,023 (the '023 patent) are owned by Plaintiff. It filed the present action alleging patent

---

[1]*Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996).

infringement by Defendants. The parties agreed to a construction of a number of the claims asserted

by Sanijet. *See* Stipulation Regarding Claims Construction filed on April 16, 2008 (Doc. 124)

(reciting stipulated and agreed constructions of terms set out in Defendants' responsive brief [Doc.

No. 116]; identifying and listing 20 claim terms which were disputed, and agreeing that as to

remaining claims terms appearing in the subject patents that the same should be given their ordinary

meaning). Under his cover letter dated May 28, 2008, Darin M. Kelmchuk, one of Plaintiff's

attorneys, provided a claim chart, attached hereto as Exhibit 1, identifying the 20 claim terms

formerly in dispute and noting those subsequently agreed upon as to the construction to be applied.

The chart also identifies the claims on which the parties still disagree with respect to the construction

to be given and the proposed constructions which each side seeks to be applied to the 13 claim terms

which remain in dispute. The magistrate judge addresses only the 13 disputed claim terms.

**Disputed claims in the '987 patent**:

1. "Unitized" appears in the patent at Col. 7:11.10-18 (App. at 00010)[2] and modifies water

pump, water inlet and hydrotherapy jet outlet nozzle - claim 1. It also appears in claim 10 and

modifies hydrotherapy jet and pump assembly. *Id.* at Col. 8:11.36-37 (App. at 00010). Plaintiff,

relying on the declaration of Kristin L. Wood, Ph.D. (App. at 00305, ¶ 7), contends that the ordinary

meaning of the term as understood by one skilled in the art is "to form or combine into one unit

connected together without intervening pipes." Defendants on the other hand argue for a

construction of the term to be "connected together so as to be a self-contained single unit." There

is no basis in the magistrate judge's opinion to expand the construction of the term "unitized" to

include a modifier, to wit: "without intervening pipes." Accordingly, the court should adopt the

---

[2]Unless otherwise noted the Appendix refers to Plaintiff's Appendix (Doc. 112).

construction proposed by Defendants.

2. "Inlet" appears in the patent at Col. 7:11.13-14 and 22-36 (App. at 00010). Plaintiff again relies on Dr. Wood's declaration (App. at 00305-306, ¶ 8) to support its position that the term should be construed to mean "an opening providing a means for entrance or intake." Defendants submit that the inventor has chosen to define the term by stating that "[a] water inlet is *defined by* a circular inlet screen 106 having inlet openings 108 around the entire periphery. Screen 106 is held in place upon mounting brackets 110 by means of mounting screws 112." (Emphasis added) (App. at 00008 at Col. 4:11.49-50). An inventor is permitted to be his own lexicographer and to give terms meanings different from those ordinarily given. *See e.g. Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.,* 262 F.3d 1258, 1268 (Fed. Cir. 2001). However, the language which Defendants cite relates to a description of a "water inlet," not to the term "inlet" as it appears elsewhere in the '987 patent. I believe that Defendants take the term "water inlet" out of its specific context and improperly seek to use it to give the term "inlet" a construction other than its ordinary meaning. Accordingly, the court should adopt the construction submitted by Plaintiff.

3. "Means for sealing the assembly in the hole" appears in the patent at Col. 7:11.19-21 (App. at 00010). It is undisputed that the function to be accomplished is that of sealing the assembly in the hole of a hot tub, spa, bathtub, whirlpool or bath. While corresponding structure need not include all things necessary to enable the claimed invention to work, it must include all structure that actually performs the recited function. *See Cardiac Pacemakers Inc. v. St. Jude Medical, Inc.*, 296 F.3d 1106, 1119 (Fed. Cir. 2002). A rubber gasket alone will not seal the assembly in the hole. It must be compressed between two surfaces - here the flange of the casing and the wall of the tub. *See* declaration of Reza Afshar, Defendants' Exhibit G, at 3. The patentee recognizes that more than

3

the gasket is necessary, recognizing that "A rubber gasket (not shown) can be provided between flange 66 and the wall 52 of the tub to assure a waterproof seal." (Col. 4:11.2-4). Because Plaintiff's requested term construction is deficient, the court should adopt Defendants' proffered construction.

**Disputed claims in the '878 patent and the '023 patent:**

1. "Jet assembly" appears in the '878 patent as claim 1 at Col. 4:11.30-38 (App. at 00106) and in the '023 patent as claim 7 at Col. 4:11.60-61 (App. at 0162). The patent specifications describe a jet assembly that receives and pumps fluid. '878 patent at Col. 2:11.5-13; Col. 4:11.3-6, FIGs 4A and 4B (App. at 00102-103; 105-106); '023 patent at Col. 2:11.6-16; Col. 3.1.66 - Col. 4:1.1 FIGs 4A and 4B (App. at 000158-159; 000161-162). The claims for each patent also describe a jet assembly that receives and pumps fluid. '878 at Col. 4:11.39-41 (App. at 00106) and '023 at Col. 4:11.26-27 (App. at 00162). Plaintiff contends that the ordinary meaning to be applied to "jet assembly" is "any fluid pumping apparatus that both receives and pumps fluids without external tubing." *See* declaration of Dr. Wood (App. at 000312-313 ¶ 19).

Defendants argue that Plaintiff's proposal ignores the prosecution history of the '878 patent. Specifically they point to Booth's response to the patent examiner's reference to prior art. *See* Defendants' Exhibit E at 40. They argue that the jet apparatus in both patents requires that the "jet assembly" include "at least an escutcheon, an impeller or other watted components which must be removable as a one-piece unit." Defendants' brief at 16.

The construction which Plaintiff seeks is consistent with the definition which appears in the '878 patent, *see* Col. 4:11.4-6 (App. at 00106) and which appears in the '023 patent, *see* Col. 3:1.66 to col. 4.1.1 (App. at 00162). It also appears that it is wholly consistent with its reasonably well-

understood meaning in the art. *See* declaration of Dr. Wood (App. at 00312-00313 at ¶ 19). Therefore sufficient structure is recited. *See e.g. Watts v. XL Systems, Inc.,* 232 F.3d 877, 880-81 (Fed.Cir. 2000). Plaintiff also argues that the inventor's response related only to the '878 patent and further that the record shows that the patent examiner allowed a broad and less restrictive construction of the "jet assembly" claim in the subject patents. I find Plaintiff's arguments to be more persuasive and recommend that the court adopt the Plaintiff's proffered claim construction to the term "jet assembly" appearing in the subject patents.

2. The term "jet casing" appears in the '878 patent in claims 1, 7 and 11 at Col. 4:11.35-38, Col. 2:1.67 - Col. 3:1.38, and FIGs 1A, 1B and 3 (App. at 00100, 00102, 00105 and 00106) and in the '023 patent as claims 1, 7, 10 and 11 at Col. 4:11.60-61, Col. 2:1.64 - Col. 3:1.34 and FIGs 1A, 1B and 3 (App. at 00156, 00158, 00161 and 00162). Defendants argue that the definition of this claim must include the qualification that the "jet casing" be fastened to the tub, for mounting the "jet assembly" *supra*, external housing. Nothing in the record is cited to support the additional language. Frankly, it appears unnecessary to define the term at all for the benefit of the fact finder, but if need there be, it should be construed to mean "a housing or outer covering of a device that produces a fluid flow."

3. "Operably housed" appears in the '878 patent in claim 1. The definition proposed by Plaintiff is consistent with the dictionary meanings of "operably" and of "housed." *See* App. at 00289 and 00284. Therefore, its claim and construction proposal of this term should be given.

4. The phrase "nozzle located within the external housing" appears in claim 3 of the '878 patent at Col. 4:11.45-47 (App. at 00106). Neither the dictionary definition of the word "within," nor the ordinary and customary meaning of the word "within" in the context of this phrase as

understood by one skilled in the art engrafts the modifier "wholly contained" onto the described location of the nozzle. Therefore, Plaintiff's proposed definition should be adopted by the court.

5. Claim 1 of the '878 patent claims a whirlpool jet apparatus which includes a jet assembly operably housed in a jet casing by "hand manipulatable means for retaining." *See* App. at 00106, Col. 4:11.33-34. In its fifth claim the '878 patent claims a whirlpool apparatus that includes a jet assembly operably housed in a jet casing by "hand manipulatable means for securing." *Id.* at 59-62. Issue is joined in the main on how the means for "retaining" and for "securing" are to be defined. Plaintiff argues that they should be given the general description of a "quick connect" or an "elastic connector" as this type of locking or fastening mechanism is referred to by those skilled in the art. Defendants on the other hand argue that since only one structure is disclosed, the patented means are limited to those specifically described. 35 U.S.C. § 112 ¶ does not permit incorporation of structure beyond that necessary to perform the claimed function. *Rodine PLC v. Seagate Tech, Inc.,* 174 F.3d 1294, 1302 (Fed. Cir. 1999). The means for "retaining" and "securing" are specifically set out. *See* App. 00106 at Col. 3:1.26-37. Therefore, the term "retaining" as it appears with reference to claim 1 should be construed as meaning "by rotating the jet eschutcheon so as to engage the threads (*See* FIG. 4B, Nos. 62 and 64) and the term "securing" as it appears with reference to claim 5 should be construed as meaning "by rotating jet eschutcheon so that teeth of the jet eschutcheon engage the shoulders of the jet casing."

6. As noted above, the '878 patent claims a whirlpool jet apparatus. App. 00106 at Col. 4:1.26. The whirlpool jet apparatus includes a jet assembly engaged with "means on said casing for driving said assembly" to produce jetted water. *Id.* at Col. 4:11.35-38. The positions taken by each side are not unlike those taken with respect to "retaining" and "securing," *supra.* Plaintiff correctly

points out that the above quoted phrase refers to means <u>on</u> the jet casing for driving the jet assembly. The miter gears have a drive shaft which penetrates the <u>back</u> of the jet casing. *Id.* Col. 3:11.14-15 and FIG. 3 at App. 102. The miter gears are contained in their own gear housing and are <u>not</u> engaged with the jet assembly as required by the claim language. Therefore, Defendants' contention that the phrase should be construed with a reference to a "plurality of gear housings" is flawed and without foundation. The court should adopt Plaintiff's proposal and construe the above phrase appearing in claim 1 of the '878 patent to mean "a transmission or the equivalent that transmits power to the jet assembly."

7. The final disputed term is "by hand." The term appears in claims 2, 7, 9 and13 of the '023 patent. *See* App. at 00162, Col. 4:11, 33-35; Col. 4:1.63; 00163, Col. 5:11.14-15; Col. 6:11.17-19. The term also appears as part of the phrase "by hand without the use of a tool" in claims 3 and 14 of the patent. *See* App. at 162, Col. 4:11.36-39 and at 163, Col. 6:11.21-23.

Plaintiff contends that the term "by hand" should be construed to mean manually with or without tools while Defendants argue that it should mean manually without the use of tools or chemicals. Unlike the phrase appearing in claims 3 and 14 which expressly recites "without the use of a tool," the claims in 2, 7, 9 and 13 do not include any limitation or qualification to the term "by hand." Plaintiff correctly observes that were Defendants' proposal adopted, the claims in all would be identical. The presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim. *Phillips v. AWH Corp.,* 415 F.3d 1303, 1314-15 (Fed. Cir. 2005) (citing *Liebell-Florsheim Co. v. Medrad, Inc.,* 358 F.3d 898, 910 (Fed. Cir. 2004).

While claims 3 and 14 expressly exclude the use of a tool in effecting disengaging and

7

removing etc., the claims which use the term "by hand" without qualification make no such limitation. Therefore, the court should adopt the construction proffered by Plaintiff.

**RECOMMENDATION**:

For the foregoing reasons it is recommended that:

1. The court construe the claim terms set out in the parties' Stipulation Regarding Claims Construction (Doc. 124) reciting those terms agreed upon in Defendants' responsive brief (Doc. 116) as set out in the agreed upon definitions.

2. The court construe the claim terms with agreed claim constructions, identified in attached Exhibit 1, as set out in the agreed upon definitions.

3. That the court construe the disputed claim terms as follows:

a. "Unitized" ('987 patent, claims 1 and 10) means "connected together so as to be considered a self-contained unit."

b. "Inlet" ('987 patent, claim 1) means "an opening providing a means for entrance or intake."

c. "Means for sealing the assembly in the hold" ('987 patent, claim 1) means "a mounting flange and screws, with or without an intervening rubber gasket, or the equivalent.

d. "Jet assembly" ('878 patent, claim 1 and '023 patent, claim 7) means "any fluid pumping apparatus that both receives and pumps fluid without external tubing."

e. "Jet casing" ('878 patent, claims 1, 7 and 11; and '023 patent, claims 1, 7, 10 and 11) means "a housing or outer covering of a device that produces fluid flow."

f. "Operably housed" ('878 patent, claim 1) means "jet assembly, when in operation, is substantially within the casing."

8

g. "Nozzle located within the external housing" ('878 patent, claim 3) means "nozzle is positioned in the external housing of the jet assembly."

h. "Hand-manipulatable means for retaining" ('878 patent, claim 1) means "hand operated by rotating the jet eschutcheon so as to engage the treads."

i. "Hand-manipulatable means for "securing" ('878 patent, claim 5) means "hand operated by rotating jet eschutcheon so that teeth of the jet eschutcheon engage the shoulders of the jet casing."

j. "Means on said casing for driving said assembly" ('878 patent, claim 1) means "a transmission or the equivalent that transmits power to the jet assembly."

k. "By hand" ('023 patent, claims 2, 7, 9 and 13) means "manually with or without tools."

A copy of this recommendation shall be transmitted to counsel for the parties.

SIGNED this 13th day of August, 2008.

_Wm. F. Sanderson, Jr._
_____
WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE

## **NOTICE**

In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten (10) days after being served with a copy of this recommendation. Pursuant to Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten-day period may bar a de novo determination by the district judge of any finding of fact or conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.